**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACOB JACKSON, on behalf of himself and others similarly situated, | Civil Action No.: |
| Plaintiff, | **COLLECTIVE ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CITY OF NEW YORK, | |
| Defendant. | |

Plaintiff Jacob Jackson ("Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendant City of New York ("City" or "Defendant"):

## NATURE OF THE CLAIMS

1. In advance of each winter season, the City, through its agency, the New York City Department of Sanitation ("DSNY"), hires a contingent of emergency snow shovelers ("Emergency Snow Shovelers") to help remove snow and ice from public areas across the city after heavy snowfalls.

2. The City, acting directly and through DSNY, controls how Emergency Snow Shovelers are paid and sets the terms and conditions of their employment.

3. Despite exercising this control, the City engages in a pattern and practice of failing to compensate Emergency Snow Shovelers for their work, including by failing to pay some Emergency Snow Shovelers altogether and by delaying payment to others for weeks or even months after the work is complete.

4.      Despite establishing weekly pay periods, with regularly scheduled pay days being every Friday, the City openly acknowledges that payment of wages can take up to 12 weeks and indicates that some Emergency Snow Shovelers may remain unpaid unless they follow up, directing those who have not received payment within six weeks to contact DSNY and provide information about, among other things, the dates and times they worked.

5.      As a result of these practices, Plaintiff brings claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other similarly situated Emergency Snow Shovelers employed by the City at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

7.      Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.  Venue is also proper because Defendant resides in this District. DSNY is headquartered at 125 Worth Street, New York, NY 10013.

## PARTIES

A.      **Plaintiff Jacob Jackson**

8.      Plaintiff is a resident of the State of New York and was employed by Defendant as an Emergency Snow Shoveler for the 2025–2026 season.

9.      At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of all relevant statutes and regulations.

2

**B.**     **Defendant City of New York**

10.     The City of New York is a municipal corporation that controls and oversees, *inter alia*, the operations of the DSNY across all five boroughs.

11.     At all relevant times, the City controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

12.     At all relevant times, the City established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll applicable to Plaintiff and all persons similarly situated.

13.     At all relevant times, the City maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

14.     At all relevant times, the City was an "employer" within the meaning of all relevant statutes and regulations.

## FACTUAL ALLEGATIONS

15.     Since the late 1800s, New York City has employed snow shovelers to keep sidewalks clear following major snowstorms.

16.     Seasonal snow shoveling has remained a part of the City's operations well into the 21st century, with the DSNY publicly urging people to sign up as "Emergency Snow Shovelers" ahead of storms to help clear snow and ice from bus stops, crosswalks, and other public spaces.

17.     To qualify as an Emergency Snow Shoveler, applicants must be at least 18 years old, eligible to work in the United States, and capable of performing heavy physical labor. They are also required to register in advance.

18.    Registration opens each fall and remains available until positions are filled or the winter season ends without further snowstorms.

19.    Registration is available in two ways: by scheduling an appointment online through the DSNY website or by registering in person at a local sanitation garage.[1]

20.    Once registered, an Emergency Snow Shoveler is assigned to the specific sanitation garage where the registration was completed and is called in to work when snowstorms occur.

21.    The DSNY has established a weekly pay period for its sanitation workers, including Emergency Snow Shovelers, with the regularly scheduled pay days being every Friday.

22.    Emergency Snow Shovelers for the 2025–2026 season were paid $19.14 per hour, with the rate increasing to $28.71 per hour after the first 40 hours worked in a week.[2]

23.    Notably, on February 23, 2026, Mayor Zohran Mamdani announced that the City would temporarily increase pay for Emergency Snow Shovelers to $30.00 per hour, with overtime rates of up to $45.00 per hour, for the duration of the winter event occurring at that time.

24.    The DSNY confirmed this rate increase on its website, noting that "due to blizzard conditions in the current winter storm, pay for this winter event starts at $30 per hour and increases to $45 per hour after the first 40 hours worked in a week."[3]

25.    In prior seasons, Emergency Snow Shovelers were paid $18.54 per hour, with overtime rates up to $27.81 during the 2024–2025 season; $18.00 per hour, with overtime up to

---

[1] The DSNY operates 59 distinct garages citywide.
[2] *See* NYC York City Department of Sanitation, Emergency Snow Shovelers, https://www.nyc.gov/site/dsny/careers/civilians/emergency-snow-shovelers.page (last visited Mar. 20, 2026).
[3] *See* NYC York City Department of Sanitation, Emergency Snow Shovelers, https://web.archive.org/web/20260223223426/https://www.nyc.gov/site/dsny/careers/civilians/emergency-snow-shovelers.page (archived Feb. 23, 2026).

$27.00, during the 2023–2024 season; and $17.00 per hour, with overtime up to $25.50, during the 2022–2023 season.

26.     According to the DSNY, as of the date of this filing, registration for the 2025–2026 is currently closed because "all remaining appointments are full for this season."[4] Registration is expected to reopen in the fall of 2026, and if additional snow shovelers are needed this season, the department will contact New Yorkers who have already registered.

27.     News reports indicate that more than 2,500 people registered to work as Emergency Snow Shovelers during the 2025–2026 season;[5] Plaintiff was one such registrant.

28.     On or about November 24, 2025, Plaintiff registered to be an Emergency Snow Shoveler through the DSNY website.

29.     Upon registering, Plaintiff received an email from the DSNY confirming the details of his registration appointment. The email informed Plaintiff that his appointment was scheduled for December 4, 2025, at 11:30 a.m., at Bklyn Garage 16, located at 922 Georgia Avenue, Brooklyn, New York, which was the garage to which Plaintiff would be assigned.

30.     On December 4, 2025, Plaintiff reported to Bklyn Garage 16, provided the requisite forms of identification, completed onboarding paperwork and received an identification badge.

31.     Plaintiff was informed that he would receive a call the night before he was expected to work, at which time he would be instructed to report to the garage the following day at either 7:00 a.m. or 8:00 a.m.

---

[4] *See supra* at 4 n.2.
[5] Emma Goldberg, *N.Y.C. Sanitation Department Mobilizes Into 'Full Force Posture' for Storm Duty*, N.Y. TIMES (Feb. 23, 2026), https://www.nytimes.com/2026/02/23/weather/nyc-sanitation-snow-shovel-plow.html.

32.    Plaintiff's regular shifts were typically eight hours long and ran from either 7:00 a.m. to 3:00 p.m. or 8:00 a.m. to 4:00 p.m.

33.    After receiving a call the night before, Plaintiff reported to Bklyn Garage 16 in the morning and was instructed, along with other Emergency Snow Shovelers, to sign an attendance sheet (which he did).

34.    Plaintiff and the other Emergency Snow Shovelers were issued a safety vest, snow shovel, and ice pick, and were eventually escorted to designated snow removal sites via a van or MTA bus.

35.    Plaintiff and the other Emergency Snow Shovelers were accompanied by two DSNY employees, one of whom remained in a vehicle to monitor the worksite, while the other worked alongside the snow shovelers and provided instructions regarding the work to be performed.

36.    At the conclusion of each shift, Plaintiff and the other Emergency Snow Shovelers were escorted back to Bklyn Garage 16, where they returned their equipment and signed a timesheet reflecting their names, the date, and the number of hours worked that day. A DSNY employee supervised this process and maintained the timesheet.

37.    DSNY maintained all the time records through the timesheets signed by the Emergency Snow Shovelers at the conclusion of their shifts.

38.    To Plaintiff's best recollection, he worked approximately 21 days as an Emergency Snow Shoveler during the 2025–2026 season, with each shift lasting eight hours. Specifically, he recalls working one day in December 2025, approximately 10 days in January 2026, and approximately 10 days in February 2026.

39.     Despite working approximately 21 days during the 2025–2026 season, the City has failed to fully compensate Plaintiff for all hours worked during that period. Moreover, when Plaintiff did receive paychecks, they failed to account for all hours worked and were issued many weeks after the work was performed.

40.     In fact, to date, Plaintiff has received only two checks from the City, reflecting payment for only 16 hours of work as an Emergency Snow Shoveler during the 2025–2026 season, despite Plaintiff having worked substantially more hours —approximately 168 hours—during that period.

41.     For instance, Plaintiff received one paycheck reflecting payment for only eight hours of work for the period of February 1, 2026 through February 7, 2026, in the amount of $153.12 in gross pay ($19.14 per hour), despite having worked more hours during that time period. Further, this paycheck was not issued until March 6, 2026, almost an *entire month* after he performed such work for Defendant.

42.     Plaintiff received a second paycheck also reflecting a payment for only eight hours of work in the amount of $153.12 in gross pay ($19.14 per hour), for the period of February 22, 2026 through February 28, 2026.

43.     During this period, Plaintiff worked 40 hours in total, consisting of five days at eight hours per day. Nevertheless, Plaintiff was paid for only eight hours of work, with the remaining 32 hours being completely unpaid.

44.     Furthermore, the February 22 through February 28, 2026 pay period coincided with the City's public announcement temporarily increasing compensation for Emergency Snow Shovelers to $30.00 per hour, with overtime rates of up to $45.00 per hour; nevertheless, Plaintiff's paycheck improperly reflects payment at the previous lower rate of $19.14 per hour.

7

45.     Most notably, Plaintiff has yet to receive any compensation at all for the work he performed as an Emergency Snow Shoveler in December 2025 and January 2026.

46.     Based on various news reports, the City has a consistent policy and practice of failing to pay Emergency Snow Shovelers their wages either at all or until multiple weeks and even months after their work was performed.

47.     A February 27, 2026 article published by *The City* reported that a New York City resident who worked as an Emergency Snow Shoveler following a December 14, 2025 snowfall was not paid until early February 2026.[6] The article further reported that several other Emergency Snow Shovelers who worked during a major storm in January 2026 had still not been paid as of the publication date of the article, *more than one month* later.[7] The article quotes yet another Emergency Snow Shoveler who stated that workers were told that "at the end of the season, when everything is finished, that's when they'll cut us a check."[8]

48.     According to the same article, a DSNY spokesperson admitted that payment of wages to Emergency Snow Shovelers had been delayed by the City by four to six weeks.[9]

49.     In fact, the City's 311 website previously advised that compensation for emergency snow shoveling work during the 2025–2026 season could be delayed for up to 12 weeks.[10]

50.     Both the City's 311 website and the DSNY's further instruct Emergency Snow Shovelers who have not received payment after six weeks to contact the DSNY by email or mail,

---

[6] *See* Lilly Sabella, *Snow Shovelers Answered the Mayor's Call, But Payday May Not Arrive Until Spring*, THE CITY (Feb. 27, 2026), https://www.thecity.nyc/2026/02/27/snow-shoveler-pay-check-mamdani-blizzard-work/.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *See* New York City 311, *Snow Removal Employment*,
https://web.archive.org/web/20260224142418/https://portal.311.nyc.gov/article/?kanumber=KA-02377 (archived Feb. 24, 2026).

and to provide identifying information, including their name, Social Security number, dates and times worked, and the garage from which they were assigned.[11]

51.    Defendant has willfully disregarded and purposefully evaded the recordkeeping requirements of the FLSA and supporting regulations by shifting the burden of maintaining accurate payroll records—and of securing payment altogether—onto Plaintiff and other Emergency Snow Shovelers.

52.    Further, Defendant engages in a pattern and practice of failing to pay timely wages to Plaintiff and all other Emergency Snow Shovelers, instead paying them late (if at all).

53.    Defendant also engages in a pattern and practice of denying Plaintiff and all other Emergency Snow Shovelers minimum wages and all earned wages at their regular rates of pay.

54.    Defendant's failure to pay Plaintiff and other Emergency Snow Shovelers in a timely manner, or at all, has caused Plaintiff and other Emergency Snow Shovelers to suffer concrete harm.

55.    Specifically, each instance where Defendant has failed to timely pay, or failed to pay at all, Plaintiff and the other Emergency Snow Shovelers were: (i) deprived of money to which they had a right, thereby costing them the time value of their money; (ii) deprived of the opportunity to invest their money; and/or (iii) otherwise unable to use their wages to pay bills and satisfy other financial obligations.

### FLSA COLLECTIVE ACTION ALLEGATIONS

56.    Plaintiff brings his FLSA claims as a collective action on behalf of himself and all other similarly situated persons who have been employed by the City as Emergency Snow Shovelers during the full statute of limitations period (the "FLSA Collective").

---

[11] *See* New York City 311, *Snow Removal Employment*, https://portal.311.nyc.gov/article/?kanumber=KA-02377 (last visited Mar. 20, 2026); *see also supra* at 4 n.2.

9

57.     At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendant's practices of: (i) failing to compensate Plaintiff and the FLSA Collective at the federal minimum wage for all hours worked in a workweek; and (ii) failing and refusing to timely pay all wages owed.

58.     At all relevant times, Defendant has been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties are not exempt from the provisions of the FLSA.

59.     Defendant's violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

60.     As a result of their unlawful conduct, Defendant is liable to Plaintiff and the FLSA Collective for the full amount of their unpaid and late wages, with interest, plus an additional equal amount as liquidated damages, plus reasonable attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

61.     While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 2,500 members of the FLSA Collective.

62.     Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective.

63.     Accordingly, the Court should require Defendant to provide Plaintiff with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiff may provide the members of the FLSA

Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES
### *(On Behalf of Plaintiff and the FLSA Collective)*

64.    Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

65.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and all applicable regulations thereunder.

66.    The FLSA requires covered employers, including Defendant, to pay the Emergency Snow Shovelers all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

67.    Plaintiff and the FLSA Collective were not exempt from the requirement that Defendant timely pay them their wages.

68.    During the statute of limitations period, Defendant has engaged in a policy and practice of failing to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

69.    As a result of Defendant's failure to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendant has violated the FLSA and/or applicable regulations thereunder.

70.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

11

71.    Defendant's violations of the FLSA have significantly harmed Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE**
*(On Behalf of Plaintiff and the FLSA Collective)*

72.    Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

73.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

74.    The FLSA requires covered employers, including Defendant, to compensate employees at a rate not less than the federal minimum wage for all hours worked in a workweek.

75.    Plaintiff and the FLSA Collective were not exempt from the requirement that their employer pay them minimum wages under the FLSA.

76.    During the statute of limitations period, Defendant has engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek.

77.    As a result of Defendant's failure to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek, Defendant has violated the FLSA and/or applicable regulations thereunder.

78.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

79.    Defendant's violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the FLSA Collective, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal laws;

B.    Grant an injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendant to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Designate Plaintiff as the representative of the FLSA Collective, and his counsel of record as counsel for the FLSA Collective;

E.    Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendant's violations of the FLSA, and award those damages against Defendant and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

F.    Award Plaintiff and the FLSA Collective an additional equal amount as liquidated damages because Defendant's violations were without a good faith basis;

13

G.　　Award Plaintiff and the FLSA Collective their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

H.　　Grant Plaintiff and the FLSA Collective such other and further relief that the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, on behalf of himself and the FLSA Collective, hereby demands a trial by jury on all issues of fact and damages.

Dated: March 20, 2026　　　　　　　　　　　**FARUQI & FARUQI, LLP**
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　By: */s/ Innessa M. Huot*
　　　　　　　　　　　　　　　　　　　　　　Innessa M. Huot

　　　　　　　　　　　　　　　　　　　　Shawn R. Clark
　　　　　　　　　　　　　　　　　　　　Kathryn A. Hettler
　　　　　　　　　　　　　　　　　　　　685 Third Avenue, 26th Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　　　　Telephone: 212-983-9330
　　　　　　　　　　　　　　　　　　　　Facsimile: 212-983-9331
　　　　　　　　　　　　　　　　　　　　ihuot@faruqilaw.com
　　　　　　　　　　　　　　　　　　　　sclark@faruqilaw.com
　　　　　　　　　　　　　　　　　　　　khettler@faruqilaw.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff and the FLSA Collective*

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JACOB JACKSON, on behalf of himself and others similarly situated,

                       Plaintiff,

               v.

CITY OF NEW YORK,

                       Defendant.

Civil Action No.:

**CONSENT TO SUE**

I, __Jacob Jackson__, have been employed by Defendant as an emergency snow shoveler in the last three years and am a named Plaintiff in the above-captioned action, *Jackson, et al. v. City of New York*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendant and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): __Jacob Jackson__

Signature: __Jacob Jackson__
Jacob Jackson (Mar 19, 2026 16:24:30 EDT)

Date: __03/19/2026__