UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACOB JACKSON, on behalf of himself and others similarly situated,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/18/2026

26 Civ. 2320 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Jacob Jackson, alleges that Defendant, the City of New York (the "City"), failed to properly compensate him and other emergency snow shovelers for their work under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. *See generally* Compl., ECF No. 1. Plaintiff moves for an order conditionally certifying a collective action under 29 U.S.C. § 216(b). *See* Mot., ECF No. 16; Mem., ECF No. 17; *see also* Opp., ECF No. 28; Reply, ECF No. 31. Plaintiff also requests notice to similarly situated persons, expedited disclosure of contact information, and equitable tolling of the statute of limitations. *See* Mot. at 1. For the reasons stated below, Plaintiff's motion is GRANTED IN PART.

## BACKGROUND[1]

In advance of each winter season, the New York City Department of Sanitation ("DSNY") hires members of the public to seasonal positions to help clear snow accumulation from roadways and sidewalks ("Emergency Snow Shovelers"). *See* Compl. ¶¶ 1, 15. DSNY "publicly urg[es] people to sign up [for these positions] ahead of storms to help clear snow and ice from bus stops, crosswalks, and other public spaces." *Id.* ¶ 16. Emergency Snow Shovelers

[1] The following facts are taken from the amended complaint and declarations submitted with Plaintiff's motion, and are accepted as true for the purposes of this opinion. *See, e.g.*, *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 371–72 (S.D.N.Y. 2014); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.").

must be at least 18 years old, eligible to work in the United States, and capable of performing heavy physical labor. *See id.* ¶ 17. Typically, registration, which can be completed online or in-person at a local sanitation garage, opens each fall and remains available until positions are filled or the winter season ends without further snowstorms. *Id.* ¶¶ 18–19. For the 2025–2026 winter season, Emergency Snow Shovelers were paid $19.14 per hour, with an increased rate of $28.71 after 40 hours worked in a week. *Id.* ¶ 22. On February 23, 2026, however, the City announced an enhanced pay rate of $30 per hour, with a further increase to $45 after 40 hours of work. *Id.* ¶ 23. DSNY has a weekly pay calendar for all sanitation workers, including Emergency Snow Shovelers, with regularly scheduled pay days occurring every Friday. *Id.* ¶ 21. News reports indicate that more than 2,500 people registered to work as Emergency Snow Shovelers during the 2025–26 season. *Id.* ¶ 27.

Plaintiff, Jacob Jackson, alleges that, despite working as an Emergency Snow Shoveler for approximately twenty-one days in the winter season (one day in December 2025, ten days in January 2026, and ten days in February 2026), he and other Emergency Snow Shovelers did not receive prompt payment for services rendered. *Id.* ¶ 39. Jackson states that he worked eight hours per shift as an Emergency Snow Shoveler during the 2025–26 winter months but did not receive promised wages according to SDNY's pay calendar, *id.* ¶¶ 39–40. As of March 20, 2026, Jackson had only received two checks from the City, reflecting payment for only sixteen hours of the approximately 168 hours he worked during that period. *Id.* ¶ 40; *see also* Mem. at 3 (noting, however, that since the filing of his complaint, Jackson received additional paychecks).

Nicholas Arsenault makes similar allegations against the City. *See generally* Arsenault Decl., ECF No. 20. Like Jackson, Arsenault was employed by the City through the DSNY as an Emergency Snow Shoveler for the 2025–2026 winter season. *Id.* ¶ 5. Like Jackson, he would

receive a call the night before he was expected to work and would report to his assigned garage the next morning. *Id.*; Compl. ¶¶ 31, 33. At the beginning of each shift, he would sign an attendance sheet, and at the end, would sign out with his name, the date, and the number of hours worked. *See* Arsenault Decl. ¶ 6; Compl. ¶ 36. And, as with Jackson, a DSNY employee supervised this process and maintained custody of the timesheet. *See* Arsenault Decl. ¶ 6; Compl. ¶¶ 35–37. Arsenault states that he worked approximately two days for a total of twenty hours this past winter, and as of April 17, 2026, he had not been fully compensated. *See* Arsenault Decl. ¶ 11. The one paycheck Arsenault did receive was provided more than two weeks—and closer to one month—after he performed the work for the City. *See id.* ¶¶ 10–11.

A February 27, 2026 article published by *The City* reports that many Emergency Snow Shovelers were waiting for their paychecks more than two weeks after they finished their shifts. *See id.* ¶ 47 (citing Lilly Sabella, *Snow Shovelers Answered the Mayor's Call, But Payday May Not Arrive Until Spring*, The City (Feb. 27, 2026), available at https://www.thecityreporter.nyc/2026/02/27/snow-shoveler-pay-check-mamdani-blizzard-work/). In the article, one Emergency Snow Shoveler states that he was told "at the end of the season, when everything is finished, that's when they'll cut us a check." *Id.* In that same article, a DSNY spokesperson stated that there was no guarantee that people would be paid within two weeks. *See id.* About that time, the City's 311 website advised that compensation for

Emergency Snow Shovelers during the 2025–26 season "is made by check and normally takes about 4 to 6 weeks" but "can take up to 12 weeks."[2]

Jackson moves for an order conditionally certifying a collective of all individuals who worked for the City as an Emergency Snow Shoveler at any time between March 20, 2023, and the present.

## DISCUSSION

### I. FLSA Collective Action Certification

#### A. Legal Standard

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To effectuate these broad remedial goals, Section 216(b) of the FLSA permits "similarly situated" employees to maintain collective actions to remedy violations of the statute, but only if such employees "consent in writing." § 216(b). Thus, potential plaintiffs must "opt-in" to participate in a FLSA collective action. The FLSA does not guarantee an initiating plaintiff a right to obtain a court-ordered notice to potential opt-ins; rather, district courts have discretion to implement § 216(b) by facilitating notice. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010).

Courts in this Circuit utilize a two-step process to determine whether to certify a collective action. *Id.* at 554–55. At the first stage (*i.e.*, the conditional certification stage), plaintiffs must "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* at 555 (citation

[2] *See* New York City 311, *Snow Removal Employment,* https://web.archive.org/web/20260224142418/https://portal.311.nyc.gov/article/?kanumber=KA-02377 (archived Feb. 24, 2026) (cited at Compl. ¶ 49 n.10).

omitted). If a plaintiff makes this showing, the court may authorize the plaintiff to send out notices to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to the FLSA violation alleged. *Id.*; *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether [those] who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. The court may decertify the collective action if it determines that the opt-in plaintiffs are not in fact similarly situated, and the opt-in plaintiffs' claims will be dismissed without prejudice. *Id.*

B. Application

Plaintiff seeks to conditionally certify a collective action of "Emergency Snow Shovelers," or members of the public that the DSNY hired during the 2025-2026 winter season. The City argues (1) that Plaintiff has not shown that he is similarly situated to other employees in the proposed collective and (2) fails to plausibly allege that the putative collective was subject to a common policy in violation of the FLSA. *See generally* Opp.

The Court finds that conditional certification is appropriate. Plaintiff provides multiple examples of potential members of the collective who are similarly situated to himself in that they worked at the same hourly wage as Emergency Snow Shovelers for DSNY during the 2025–26 winter season and did not receive paychecks within a two-week period. For example, Nicholas Arsenault, who seeks to join the proposed collective, states that he "worked approximately two days for a total of 20 hours during the 2025–2026 season—one day in January 2026 (8 hours) and one day in February 2026 (12 hours)." Arsenault Decl. ¶ 7. Despite working twenty hours for DSNY, Arsenault states, "[t]o date, [he has] still not been fully compensated by [the City] for

[his] work as an Emergency Snow Shoveler during the 2025–2026 season, as [he has] been paid for only eight of the approximately 20 hours [he] worked in total," and he received that amount nearly one month after performing work. *Id.* ¶¶ 7–12. Arsenault's declaration closely resembles Jackson's grievances. Arsenault's description of work also closely resembles Jackson's: Emergency Snow Shovelers would receive a call before their shift and then report to the shift the next day, where they would sign in and out and be supervised by DSNY workers. *See* Arsenault Decl. ¶¶ 5–6; Compl. ¶¶ 31–37.

In addition to Arsenault's declaration, Jackson presents a news report in *The City*, a local news outlet, in which other unidentified Emergency Snow Shovelers make complaints similar to that of Jackson, namely that they remained unpaid several weeks after they finished their work. *See* Mem at 3; Compl. ¶¶ 47–48. Jackson also refers to a notice posted on the New York City 311 website, in which the City notified Emergency Snow Shovelers that payment was expected to take four to six weeks but could take up to twelve weeks, reflecting that the workers were similarly situated and subject to a common plan. *See* Compl. ¶¶ 49–50.

Together, the complaint, declarations, and news article describe a common pay practice affecting Emergency Snow Shovelers. At the initial certification stage, plaintiffs may satisfy their "very low" burden, *Chhab v. Darden Rests., Inc.,* No. 11 Civ. 8345, 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013), "by relying on their own pleadings and affidavits," *Schaefer v. M&T Bank Corp.,* 122 F. Supp. 3d 189, 194 (S.D.N.Y. 2015). "[T]he burden [of proof] is so low that even one or two affidavits establishing the common plan may suffice." *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013); *see also Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

The City's opposition focuses on the merits by arguing that "contrary to [Jackson's] claims," there was no regularly scheduled payday for Emergency Snow Shovelers and that individualized inquiries into the cause of the delay will prove necessary. *See* Opp. at 9–10. At this early stage, however, courts do not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Singh v. Anmol Food Mar, Inc.*, No. 22 Civ. 5475, 2024 WL 308241, at *2 (E.D.N.Y. Jan. 26, 2024) (citation omitted); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). Where the evidence before the court does present ambiguities, such as with respect to whether Emergency Snow Shovelers had a regularly scheduled payday, courts "draw all inferences in favor of the [p]laintiff." *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (citation omitted).

The potential factual differences identified by the City—for example, "the number of days each individual worked, how many hours the individual worked, when each individual received payment, the reasons for any delay(s), and how any such delay(s) affected the overall timing of the payment," Opp. at 10—do not defeat conditional certification. *See Lynch*, 491 F. Supp. 2d at 369 (noting that "any factual variances that may exist between the plaintiff and putative class do not defeat conditional [] certification"); *see also Flores v. Five Star Carting, LLC*, No. 14 Civ. 2970, 2015 WL 6625899, at *4 (E.D.N.Y. Oct. 30, 2015) ("[I]ssues of fact should be determined following discovery, at the second stage of FLSA collective action certification."); *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (certifying collective action of all employees, even those who worked in different positions, who were paid a flat weekly salary).

In sum, the allegations present in and attached to the initial complaint, as well as in an accompanying declaration and memorandum of law supporting collective certification, meet the threshold for collective certification. *See Myers*, 624 F.3d at 555 (requiring only a "modest" factual showing that the plaintiff and potential opt-in plaintiffs "together were victims of a common plan or policy").

II. Notice

A. Legal Standard

Although § 216(b) has no provision for issuing notice in a collective action, it is well-settled that district courts have the power to authorize a plaintiff to send notice to potential opt-in plaintiffs. *See, e.g.*, *Hoffman*, 982 F. Supp. at 261. "No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105–06 (S.D.N.Y. 2003). The Supreme Court has stated that the details of a notice under § 216(b) should be left to the discretion of the district court. *See Hoffmann-La Roche*, 493 U.S. at 170. "When exercising [their] broad discretion to craft appropriate notices in individual cases, [d]istrict [c]ourts consider the overarching policies of the collective suit provisions[,]" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).

A FLSA notice should generally contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position

> regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012). Courts have also held that the notice should include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court. *See id.* at 567.

B. Application

Plaintiff has submitted proposed email and text message notices, as well as a proposed consent form. *See* Mail Notice and Form, ECF No. 18-2; Email Notice, ECF No. 18-3; Text Message Notice, ECF No. 18-4. The City does not specifically oppose the form or dissemination method of Jackson's proposed notice. *See generally* Opp. (arguing only that notice is improper because Jackson is not similarly situated to those in the proposed collective). Courts in this Circuit regularly authorize email and text message forms of notice. *See, e.g.*, *Martin v. Sprint/United Mgmt. Co.,* No. 15 Civ. 5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) ("Courts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases."); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14 Civ. 2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the [defendants'] industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action."); *Millin v. Brooklyn Born Chocolate, LLC*, No. 19 Civ. 3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020).

The Court has also reviewed the substance of the notice and finds that it includes all relevant information such that potential plaintiffs can make an informed decision about whether to participate in the lawsuit. *See Salomon*, 847 F. Supp. 2d at 566–67. However, Jackson shall delete all statements from the Mail Notice and Form, Email Notice, and Text Message Notice

stating that the Court has authorized or approved the notice prior to dissemination. The Court finds that this language contains a "certain specter of authority," which "may imply more court sponsorship than appropriate." *Hernandez v. Merrill Lynch & Co.,* No. 11 Civ. 8472, 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012).

Next, the proposed notice specifies a seventy-five-day opt-in period. *See* Mail Notice and Form at 2. Courts in this Circuit, however, "routinely restrict the opt-in period to sixty days." *Velasquez v. Digital Page, Inc.*, No. 11 Civ. 3892, 2014 WL 2048425, at *12 (E.D.N.Y. May 19, 2014); *Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 5557489, at *1 (S.D.N.Y. Nov. 3, 2014) (noting that periods longer than sixty days "may be warranted when all parties consent, or in 'special circumstances'").[3] Plaintiff does not explain why a seventy-five-day period is warranted; the Court, therefore, finds that the typical sixty-day period is appropriate and orders that the proposed notice be modified to give opt-in plaintiffs sixty days, rather than seventy-five, to return the consent to join form to Plaintiff. *See Escano v. N & A Produce & Grocery Corp.,* No. 14 Civ. 4239, 2015 WL 1069384, at *3 (S.D.N.Y. Mar. 11, 2015).

Finally, the Court approves the three-year lookback period, tied to the filing of this lawsuit. Where, as here, "willful violations of the FLSA are alleged, the statute of limitations for the collective is three years." *Millin*, 2020 WL 2198125, at *3. Typically, "the limitations period for each potential plaintiff continues to run until they elect to opt-in to the action, 29 U.S.C. § 256(b)," but "some plaintiffs may be eligible for equitable tolling." *Id.* at *4. Because equitable tolling issues may arise with respect to individual plaintiffs, "a number of cases in this Circuit have found that at the conditional certification stage, the Court should err on the side of

[3] Although the City does not address the opt-in period, *see generally* Opp., it does not explicitly consent to a seventy-five-day period either.

caution and set the time for notice using the date of the filing of the lawsuit," *Ding v. Mask Pot, Inc.*, 347 F.R.D. 417, 430 (E.D.N.Y. 2024), "with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date," *Gaspar v. Personal Touch Moving*, No. 13 Civ. 8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sep. 14, 2014) (citation omitted); *see Marcial v. New Hudson Fam. Rest. Inc.*, No. 18 Civ. 663, 2019 WL 1900336, at *8 & n.14 (S.D.N.Y. Apr. 29, 2019). Therefore, it is appropriate that notices of the collective action be sent to prospective plaintiffs who worked for the City from three years prior to the filing of the complaint—that is, from March 20, 2023. *See* Compl.

Plaintiff is directed to (1) delete any reference to Court-authorized notice from the proposed notices and (2) set a sixty-day opt-in period from the date the notice is transmitted. Subject to these modifications, the Court approves the proposed email and text notice, which shall be disseminated to potential opt-in plaintiffs for the three-year period authorized for willful violations of the FLSA, beginning March 20, 2023.

III. Disclosure of Contact Information

Plaintiff requests, "in a computer-readable format, the names, last known mailing addresses, mobile telephone numbers, email addresses, and dates of employment" for all potential plaintiffs, *i.e.*, all Emergency Snow Shovelers employed by the City during the three-year period preceding the filing of the complaint. Mem. at 13; *see* Mot. at 1. According to the complaint, the City maintains records containing Emergency Snow Shovelers' mailing addresses, email addresses, telephone phone numbers, and dates of employment. *See, e.g.*, Compl. ¶ 29. "Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions." *Ack v. Manhattan Beer Distribs., Inc.*, No. 11 Civ. 5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (collecting cases); *see also Kim Man Fan v. Ping's on Mott, Inc.*, No. 13 Civ.

4939, 2014 WL 1512034, at *4 (S.D.N.Y. Apr. 14, 2014); *Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 WL 2600667, at *7 (S.D.N.Y. June 30, 2008) (ordering the production of employee contact information in electronic format). Plaintiff's request for discovery with respect to potential opt-in plaintiffs is granted, and the City shall provide Plaintiff with the requested material in computer-readable format within fourteen days of this order.

IV. Equitable Tolling

Finally, Plaintiff moves for equitable tolling of the statute of limitations for the putative collective from April 20, 2026, the date he filed the instant motion, until the close of the opt-in period. *See* Mem. at 14. "A district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).

The Court has already tolled the period of delay in resolving the motion for collective certification attributable to the City's request for an extension. *See* ECF No. 23. Although the Court has resolved Plaintiff's motion without substantial delay, "[i]n the Second Circuit, . . . 'equitable tolling is commonly granted upon the filing of a motion for collective certification of a collective action.'" *Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718, 2016 WL 4718413, at *11 (S.D.N.Y. Sept. 9, 2016) (citation omitted); *see McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("[Although] plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."). The Court, therefore, tolls the period from April 20, 2026, to the date of this order.

However, Plaintiff has not shown extraordinary circumstances warranting tolling during the opt-in period. *See Zhongle Chen v. Kicho Corp.*, 18 Civ. 7413, 2020 WL 1900582, at *13 (S.D.N.Y. Apr. 17, 2020) (declining to apply equitable tolling during a notice period and explaining that opt-in plaintiff delay is not an extraordinary concern but "rather, it is a common issue present in litigation"). This denial is without prejudice to individualized requests for equitable tolling, should an initial plaintiff demonstrate extraordinary circumstances. The Court, therefore, tolls the statute of limitations for all opt-in plaintiffs from the date Plaintiff filed the motion for collective certification—April 20, 2023, *see* Mot.—to the date of this order.

**CONCLUSION**

For the foregoing reasons, Jackson's motion for conditional certification of a collective action is GRANTED. The Court conditionally approves an opt-in FLSA collective of individuals who worked as Emergency Snow Shovelers at any time between March 20, 2023 and the present. *See* Mail Notice.

The Court GRANTS Plaintiff's request for expedited discovery. Within **14 days** of the date of this order, the City shall provide Plaintiff with a list in computer-readable format of all members of the FLSA collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it.

The Court ORDERS Plaintiff to modify its proposed notice as follows: (1) remove any indication that the notice is Court-approved or Court-authorized, (2) limit the opt-in period to sixty days. Within **21 days** of receiving the complete collective action list from the City, Plaintiff shall mail, email, and text the modified collective action notices and file a letter with the Court certifying compliance with this order.

Opt-in plaintiffs shall have **60 days** to email, fax, or mail (with the postmark being the determinative date) their consent to become a party plaintiff form to Plaintiff. Plaintiff shall be responsible for filing these forms with the Clerk of Court.

The Court GRANTS IN PART Plaintiff's motion for equitable tolling. The statute of limitations period is tolled from the date Plaintiff filed his motion for collective certification to the date of this order. This is without prejudice to individual requests for additional equitable tolling based on case-specific extraordinary circumstances.

The Southern District Mediation Office is respectfully directed to schedule a date for mediation at the close of the opt-in period.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 16 and notify the Mediation Office of this order.

SO ORDERED.

Dated: September 18, 2026
New York, New York

ANALISA TORRES
United States District Judge